**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

KYDAISHA BURTON, Individually and as Mother, Next Friend, and Natural Guardian of K.B., her minor child, *et al.*,

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

CASE NO.: 1:21-CV-17 (LAG)

**ORDER**

Before the Court is Defendant United States of America's Motion to Dismiss. (Doc. 7). For the reasons below, the Government's Motion to Dismiss is **DENIED**.

**PROCEDURAL BACKGROUND**

On October 22, 2019, Plaintiffs Kydaisha Burton, on behalf of herself and her minor child, K.B., and Keshawn Campbell, K.B.'s father, filed an action in the Superior Court of Dougherty County, Georgia. *See Burton et al. v. Phoebe Putney Health Sys., Inc., et al.* (*Burton I*), No. 1:20-CV-29 (LAG), (Doc. 1-1) (M.D. Ga. filed Feb. 14, 2020). Plaintiffs raised medical negligence claims against multiple healthcare entities and professionals that provided medical care to Burton and K.B. during Burton's pregnancy, labor, and delivery in 2017. *Id.* The *Burton I* defendants removed the action to this Court on February 14, 2020. *See id.* at (Doc. 1). On May 14, 2020, the Court granted the defendants' motion to dismiss for lack of subject matter jurisdiction without prejudice and remanded the case to the Superior Court of Dougherty County. *See id.* at (Doc. 22 at 1).

On May 8, 2020, Plaintiffs filed a claim with the Department of Health and Human Services, challenging the care Burton and K.B. received during Burton's pregnancy, labor, and delivery. (Doc. 10-3). Plaintiffs resubmitted the claim on June 9, 2020. (*See* Doc. 10-3). On January 20, 2021, Plaintiffs filed the instant Complaint against the United

States (the Government) under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.*, as the operator of Americus OBGYN, where Burton was a patient during her pregnancy. (Doc. 1). Plaintiffs seek $25 million in damages, as well as costs, attorney's fees and litigation expenses, pre- and post-judgment interest, and any other relief "as the Court may deem just and proper." (*Id.* ¶ 150). The Government moved to dismiss Plaintiffs' Complaint on April 9, 2021. (Doc. 7). Plaintiffs filed a Response, and the Government filed a Reply. (Docs. 10, 12). The Government's Motion to Dismiss is now ripe for review. *See* M.D. Ga. L.R. 7.3.1(A).

## FACTUAL BACKGROUND

Burton gave birth to K.B. via emergency cesarean section on October 22, 2017, after she suffered an eclamptic seizure and hypoxia that caused her to be hospitalized for five days after delivery.[1] (Doc. 1 ¶¶ 2, 73, 103–06). K.B. had no heart rate until thirty minutes post-birth and did not breathe on his own for forty minutes post-birth. (*Id.* ¶¶ 80, 83). He was hospitalized for thirty-three days and was later diagnosed with cerebral palsy and developmental delay. (*See id.* ¶¶ 94–95). While she was pregnant with K.B., Burton was a patient of Americus OBGYN, which is operated by the Government. (*Id.* ¶¶ 36, 38–39).

Burton had her first prenatal visit at Americus OBGYN in May 2017 while she was sixteen weeks pregnant. (*Id.* ¶ 38). Her due date was estimated to be late October 2017. (*Id.* ¶ 38). At thirty-five weeks pregnant on September 29, 2017, a routine prenatal visit at Americus OBGYN revealed that Burton's blood pressure was high. (*Id.* ¶ 40). Burton went to Phoebe Sumter Medical Center that evening to be seen for her elevated blood pressure, where a certified nurse midwife (CNM) noted that her blood pressure was high but her preeclampsia labs and K.B.'s heart rate were normal. (*See id.* ¶ 42). Burton was admitted for overnight observation and treated for high blood pressure. (*Id.* ¶ 43). At discharge, she was prescribed medication for her elevated blood pressure. (*Id.* ¶ 45).

[1] On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts all facts alleged in Plaintiff's Complaint (Doc. 1) as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Anderson v. Wilco Life Ins.*, 17 F.4th 1339, 1344 (11th Cir. 2021) (citation omitted).

On October 4, 2017, a prenatal visit at Americus OBGYN revealed that Burton's blood pressure remained high. (*Id.* ¶ 45). Burton reported that she had been taking her prescribed blood pressure medication but had not been on bed rest. (*Id.*). The CNM instructed Burton to return for a follow up and explained that Americus OBGYN would consider inducing labor if her high blood pressure persisted. (*Id.*). The next day at Americus OBGYN, Burton's preeclampsia labs "were within normal limits," but her hemoglobin and hematocrit levels were low. (*Id.* ¶ 46). Burton was given prescription iron. (*Id.*).

Burton went into labor on October 22, 2017, when she was thirty-eight weeks pregnant. (*Id.* ¶ 37). She presented to Phoebe Sumter Memorial Hospital around 7:00 A.M. and was admitted. (*Id.* ¶¶ 47, 53). Nurse Tiffany Barnett called CNM Crystal Settle, Burton's midwife, at 7:58 A.M. to report that Burton's blood pressure was elevated and that K.B.'s heart rate was 135 beats per minute. (*Id.* ¶ 53). CNM Settle ordered blood pressure medication for Burton. (*Id.*). At 8:03 A.M., Dr. Kenneth Healy also ordered blood pressure and cough medication. (*Id.* ¶ 54). Between 8:08 A.M. and 8:30 A.M., Burton "was coughing and vomiting," and her blood pressure rose. (*Id.* ¶¶ 55–58). At 8:42 A.M., Nurse Barnett reported to CNM Settle, who was on the way to Phoebe Sumter, that Burton's blood pressure remained high, that Burton was still coughing, and that K.B.'s heart rate had fallen to eighty beats per minute. (*Id.* ¶ 59). CNM settle ordered more blood pressure medication and notified Dr. Healy of the situation. (*Id.* ¶¶ 59–60).

At 8:47 A.M., Nurse Barnett alerted the Phoebe Sumter team that she needed a nurse anesthesiologist and noted that a doctor had been called for a possible caesarean section. (*Id.* ¶¶ 61–62). Nurse Barnett noted two minutes later that Burton was vomiting. (*Id.* ¶ 64). Dr. Healy arrived at 8:50 A.M., and four minutes later Nurse Barnett noted Burton "vomiting from nose/mouth" with "frothy sputum." (*Id.* ¶ 65). Burton's blood pressure remained elevated at 8:56 A.M., and Dr. Healy ordered more blood pressure medication. (*Id.* ¶¶ 66–67). At 9:00 A.M., CNM Settle ordered medication for chest congestion and more blood pressure medication. (*Id.* ¶ 70). CNM Settle performed a history and physical evaluation on Burton which noted that Burton "was anxious, tachycardic, unable to follow commands, and coughing with diminished breath sounds." (*Id.* ¶ 71). The evaluation also

ordered a caesarean section for Burton and noted that K.B.'s heart rate had fallen to seventy beats per minute. (*Id.*). In Dr. Healy's Operative Pre-Op Attestation, he noted that Burton "appear[ed] to be having eclamptic seizure" and to "proceed to stat C-section." (*Id.* ¶ 73).

When the anesthesia provider arrived at 9:05 A.M., Burton "was actively seizing with ineffective respiration, and was severely hypoxic." (*Id.* ¶ 75). The caesarean section began around 9:19 A.M. and K.B. was born at 9:20 A.M. (*Id.* ¶¶ 78–79). In the hours after K.B.'s birth, Burton's condition worsened. Her respirations were charted as zero at 10:26 A.M., 11:10 A.M., and 12:07 P.M., and her blood pressure remained elevated. (*Id.* ¶¶ 97–99). She was transferred by helicopter to Phoebe Putney Memorial Hospital at 2:30 P.M. and was placed on a mechanical ventilator. (*Id.* ¶ 103). A Coma Scale Assessment at 3:45 P.M. showed that Burton "had no eye opening, no motor response, and no verbal response." (*Id.* ¶ 104). Burton remained at Phoebe Putney for five days. (*Id.* ¶ 105). She was diagnosed with respiratory failure, eclampsia, acute systolic heart failure, peripartum cardiomyopathy, and anemia. (*Id.*).

K.B.'s condition post-birth was also life-threatening. At one minute of life, K.B. was nonresponsive. (*Id.* ¶ 81). He had no audible heartbeat for thirty minutes and did not breathe on his own for forty minutes. (*Id.* ¶¶ 83). K.B. was transferred to Phoebe Putney Memorial Hospital and arrived there at 1:35 P.M. on October 22, 2017. (*Id.* ¶¶ 85–86). K.B. underwent Neurodiagnostic EEGs on October 24 and 25, 2017. (*Id.* ¶¶ 90–91). The results came back abnormal, and Dr. Anthony Murro noted that K.B.'s results and symptoms "indicate[d] severe cerebral dysfunction consistent with the history of perinatal birth injury." (*Id.* ¶ 91; *see id.* ¶ 90). Phoebe Putney doctors continued monitoring and testing K.B. in the days that followed, and he was diagnosed with birth asphyxia and neonatal seizure. (*See id.* ¶¶ 92–94). K.B. was discharged on November 24, 2017. (*Id.* ¶ 94). He was later diagnosed with cerebral palsy and developmental delay. (*Id.* ¶ 95). Plaintiffs report that they have incurred and will continue to incur "extraordinary medical and other costs and expenses" for K.B.'s ongoing care and treatment, and that K.B. has suffered, among other things, "a diminished capacity to enjoy life." (*Id.* ¶¶ 109–10).

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face if the complaint alleges enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. The Court "take[s] the factual allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiffs," but is "not required to accept the legal conclusions in the complaint as true." *Anderson*, 17 F.4th at 1344–45 (citations omitted). "[A] plaintiff armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678–79. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to survive a motion to dismiss. *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

The Government argues that Plaintiffs' claims must be dismissed because they are time-barred under the FTCA's two-years statute of limitations period. (Doc. 7 at 10–12). Plaintiff argues that her claim is timely. (Doc. 10 at 7–12). The Parties spend significant time discussing whether 42 U.S.C. § 233, the Federally Supported Health Centers Assistance Act (FSHCAA), or 28 U.S.C. § 2679, the Federal Employees Liability Reform and Tort Compensation Act, applies to this case. (*See* Doc. 7 at 6–8; Doc. 10 at 14–18; Doc. 12 at 1–5). As discussed below, the result in this case is the same under either Act.

Under 28 U.S.C. § 2401(b),

> [a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

*See also McCullough v. United States*, 607 F.3d 1355, 1358 (11th Cir. 2010) (quoting *United States v. Kubrick*, 444 U.S. 111, 113 n.1 (1979)); *Riddick v. United States*, 832 F. App'x 607, 611–12 (11th Cir. 2020) (citation omitted). "FTCA claims are barred 'unless the claimant first files an administrative claim with the appropriate agency within two years from the time the claim accrues.'" *Riddick*, 832 F. App'x at 611–12 (quoting *Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1200 (11th Cir. 2008)). Thus, to determine whether a medical malpractice claim under the FTCA is time-barred, the Court must decide (1) when the claim accrued, and (2) when the claim was presented to the appropriate federal agency.

**I. Accrual**

According to the Government, Plaintiffs' claims accrued "at the latest, on October 22, 2017–the date of delivery." (Doc. 7 at 11).[2] Plaintiffs argue that their claims did not accrue until August 7, 2019, the date Burton "first learned of her injury, the Minor-Plaintiff K.B.'s injury, and that their cause was likely negligent acts and omissions by Americus OB-GYN and its employee healthcare providers, including Dr. Gehlot, Dr. Healey, nurse midwives CNMs Wilson and Settle." (Doc. 10 at 8).

A claim for medical malpractice under the FTCA "accrues 'when the plaintiff knows both the existence and the cause of h[er] injury,' even if [s]he does not yet know that 'the acts inflicting the injury may constitute medical malpractice.'" *McCullough*, 607 F.3d at 1358 (quoting *Kubrick*, 444 U.S. at 113)). The "rationale behind [this] rule is to protect plaintiffs who are blamelessly unaware of their claim because the injury has not yet manifested itself or because the facts establishing a causal link between the injury and the medical malpractice are in the control of the tortfeasor or are otherwise not evident." *Diaz v. United States*, 165 F.3d 1337, 1339 (11th Cir. 1999) (citations omitted). A plaintiff "need

---

[2] The Government's reply includes a copy of medical records. (*See* Doc. 12-1). It is unclear whether Plaintiffs' medical records are central to their claim, as their claim is not premised on the contents of these records. Moreover, the date the Government submitted the records to Plaintiff is in dispute. (*Compare* Doc. 12 at 6–7, *with* Doc. 10 at 3). "Under these circumstances, the Court cannot accept the statements in [Plaintiffs'] medical records as true for purposes of ruling on the Motion to Dismiss." *Cook v. United States*, No. 8:15-cv-402-T-36TGW, 2016 WL 9526434, at *3 (M.D. Fla. May 16, 2016) (citing *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014)).

not know that she has a legally cognizable claim for the claim to accrue, and may not bury her head in the sand once she is put on notice that the government may have caused an injury." *Id.* A plaintiff, however, "will not automatically lose her claim . . . merely because the circumstances surrounding the injury make its existence or governmental cause not reasonably knowable." *Id.* "Thus, a medical malpractice claim under the FTCA accrues when the plaintiff is, or in the exercise of reasonable diligence should be, aware of both her injury and its connection with some act of the defendant." *Id.* (quoting *Price v. United States*, 775 F.2d 1491, 1494 (11th Cir. 1985)). Because the FTCA's limitations period is an affirmative defense, the Government bears the burden of proof that Plaintiffs' claims are "barred by the statute of limitations." *Price*, 775 F.2d at 1493.

Although Burton and K.B. both suffered medical injuries on and after the date of K.B.'s birth, October 22, 2017, Plaintiffs claim that the cause of their injuries was "not reasonably knowable" to them at that time. Burton's treating physicians told her that K.B.'s breathing trouble "was a natural thing that happens in a lot of newborns" and that K.B. "had an infection that would cause seizures." (Doc. 10 at 3 (first citing Doc. 10-1 ¶ 7; and then citing Doc. 10-2 ¶ 5)). Burton asserts that it wasn't until August 7, 2019, when she saw a commercial "that spoke about birth injuries that could result in cerebral palsy" that she became aware that she, K.B., and Crawford may have suffered actionable injuries. *See Diaz*, 165 F.3d at 1339; (Doc. 10 at 11). Burton then contacted an attorney, Lisa B. Weinstein, who advised her that her and K.B.'s injuries may have resulted from "the acts and omissions of the healthcare professionals who participated in her labor and K.B.'s delivery." (*Id.* (citing Doc. 10-1 ¶ 10)).

The Eleventh Circuit has explained that "plaintiffs seeking to understand the cause of an injury may reasonably rely on advice and assurances by doctors." *Chamness ex rel. Chamness v. United States*, 835 F.2d 1350, 1353 & n.8 (11th Cir. 1988) (collecting cases). In *Burgess v. United States*, 744 F.2d 771, 775 (11th Cir. 1984), the Eleventh Circuit noted that nothing an infant's parents were told prior to the date they became aware of the cause of the infant's injuries "would [have] lead a reasonable person to suspect" the cause of the infant's injury. It was therefore reasonable for Burton to rely on the advice of her doctors

that K.B.'s injuries were a natural thing that happens to some babies during delivery. Based on the assurances from healthcare providers, Plaintiffs reasonably did not suspect the cause of their injuries until Burton saw the commercial and spoke with Weinstein. Accordingly, it is plausible that Plaintiffs' claims accrued on August 7, 2019—not October 22, 2017. Thus, Plaintiffs have shown it is plausible that their claims accrued on August 7, 2019, when Burton first became reasonably aware of "both the existence and the cause" of her and K.B.'s injuries. *See McCullough*, 607 F.3d at 1358.

## II. Presentment

Under 28 U.S.C. § 2675(a), a plaintiff must exhaust her administrative remedies before bringing a suit against the Government. "To exhaust administrative remedies, 'the claimant shall have first presented the claim to the appropriate Federal agency and h[er] claim shall have been finally denied by the agency in writing and sent by certified or registered mail.'" *Caldwell v. Klinker*, 646 F. App'x 842, 846 (11th Cir. 2016) (per curiam) (quoting 28 U.S.C. § 2675(a)). "Unless and until a claimant has exhausted h[er] administrative remedies under the FTCA, the district court lacks subject-matter jurisdiction." *Id.* (citing *Turner ex rel. Turner*, 514 F.3d at 1200). "If the agency fails to make a 'final disposition of a claim within six months after it is filed,' the claimant may treat the lack of response as 'a final denial of the claim for purposes of this section.'" *Id.* (first quoting 28 U.S.C § 2675(a); and then citing *Turner*, 514 F.3d at 1200).

Based on the accrual date discussed above, Plaintiffs were required to submit their claim to the Department of Health and Human Services by August 8, 2021. *See* 28 U.S.C § 2401(b). After the dismissal of *Burton I*, Plaintiffs submitted their claim to the United States Department of Health and Human Services on May 8, 2020. (*See* Doc. 10-3 at 4). Plaintiffs' claim was resubmitted on June 9, 2020 to "amend[] the Form 95 . . . to reflect that claims for [Plaintiff K.B.'s] injuries [were] brought on behalf of his mother." (*See id.* at 1). Because six months had passed without a decision from the Department of Health and Human Services, Plaintiffs filed the Complaint on January 20, 2021. (*See* Doc. 1; *see*

*also* Doc. 10 at 6). Accordingly, Plaintiffs timely exhausted their FTCA claim before filing the Complaint.[3]

The Court notes that "should discovery reveal that [Plaintiffs] actually did know, or otherwise should have known, the probable cause of [their] injur[ies] more than two years prior to the filing of [their] administrative complaint, the [Government] remains free to reassert this defense at an appropriate time." *See Cook*, 2016 WL 9526434, at *4. Thus, the Court need not address whether Plaintiffs' claims are subject to equitable tolling. *See id.* (citing *United States v. Wong*, 575 U.S. 402, 420 (2015)).

## CONCLUSION

Accordingly, the Government's Motion to Dismiss (Doc. 7) is **DENIED**.

**SO ORDERED**, this 31st day of March, 2022.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[3] Plaintiffs' claim is also timely under the Westfall Act's saving clause. *See* 28 U.S.C. § 2679(d)(5). Under the Westfall Act a claim is deemed to be "timely presented under section 2401(b) . . . if–(A) the claim would have been timely had it been filed on the date the underlying civil action was commenced, and (B) the claim is presented to the appropriate Federal Agency within 60 days after dismissal of the civil action." *Id.* Under 28 U.S.C. § 2679(d)(5), Plaintiffs were required to file their claim with the Department of Health and Human Services by July 15, 2020. Even using the resubmission date of June 9, 2020, Plaintiffs' claim was timely filed within sixty days of the Court's dismissal in *Burton I.* (*Compare* (Doc. 1), with *Burton I*, at (Doc. 22)).