DECEMBER 15, 2022

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION
CASE NUMBER 1:21-CV-17

---

KYDAISHA BURTON, individually, )
and as Mother, Next Friend, and)
Natural Guardian of K.B., her  )
minor child, and KESHAWN       )
CAMPBELL, individually,        )
                               )
                  PLAINTIFFS   )      DECEMBER 15, 2022
vs.                            )
                               )      ALBANY, GEORGIA
UNITED STATES OF AMERICA,      )
                               )
                  DEFENDANT    )
_____)

SCHEDULING CONFERENCE
BEFORE THE HONORABLE LESLIE ABRAMS GARDNER
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

FOR THE PLAINTIFFS              WILLIAM S. STONE, ESQ.
                                STONE LAW GROUP
                                589 COLLEGE STREET
                                BLAKELY, GEORGIA  39823
                                and
                                EDWARD AUCOIN, JR., ESQ.
                                GRANT & EISENHOFER
                                30 N. LASALLE STREET, SUITE 2350
                                CHICAGO, ILLINOIS  60602


FOR THE DEFENDANT               BOWEN REICHERT SHOEMAKER, AUSA
                                LANCE SIMON, AUSA
                                UNITED STATES ATTORNEY'S OFFICE
                                300 MULBERRY STREET, 4TH FLOOR
                                MACON, GEORGIA  31201

1          (Commencing at 3:37 p.m.)

2          THE COURT:  All right.  So we're here for a scheduling

3     conference in Burton versus the United States, 1:21-CV-17.

4     Would counsel please announce your appearances.

5          MR. AUCOIN:  Good afternoon, your Honor.  My name is

6     Edward Aucoin, A-U-C-O-I-N.  And I'm one of the attorneys on

7     behalf of the plaintiffs.

8          MR. STONE:  My name is William Stone.  I'm also here

9     for plaintiffs.

10         MS. SHOEMAKER:  Good afternoon, Judge.  I'm Bowen

11    Reichert Shoemaker, here for the United States.

12         MR. SIMON:  Good afternoon, Judge.  My name is Lance

13    Simon.  I'm also an attorney for the United States.

14         THE COURT:  All right.  So I have seen the proposed

15    scheduling and discovery order.  It appears that both parties

16    agree that this should be a bifurcated process.  The dispute

17    comes with the length of the various phases.  And the plaintiff

18    appears to be asking for a very extended time, and the

19    government appears to be asking for a bit less.

20         Now, when I've looked through this, like, some of the dates

21    make sense, but there are a couple of them that I just don't

22    understand the basis of it.  So I think it might make sense to

23    go through it and for you all to explain the basis for the

24    difference.

25         So, as I'm looking at it, the first kind of discrepancy,

DECEMBER 15, 2022

1  which is not all that big, is the close of written and fact

2  discovery.  Plaintiff suggests an eight-month period.  Defendant

3  suggests six.  Can somebody explain the difference?  Like, why

4  can't -- you know, what is the need for eight months versus six

5  months?

6          MR. STONE:  Well, let me take a stab at it first, your

7  Honor.  We do a lot of these birth injury cases, and they all

8  take a long time.  And it's not, in the state system, it's not

9  infrequent at all for us to go have to go back and get

10 extensions on the discovery period.

11     And from my experience with you, I understand that you would

12 prefer we get it straight upfront, if we can, and not be

13 continually coming back, asking for more and more time.  So

14 that's really the genesis of it, just to suit your preference by

15 how you manage your docket.

16          THE COURT:  And I thought that was the case.  So I'll

17 actually focus on the two parts that seem to me to be the

18 biggest difference.

19     And the largest one, of course, is the close of expert

20 discovery.  Now, I certainly want you to ask for as much time as

21 you need, but you also need to diligently prosecute your case.

22     You are asking, the plaintiffs are asking for 15 months

23 after the close of fact discovery whereas defendant is

24 requesting seven months.  And I think that makes a huge portion

25 of (inaudible).  And so that's a concern.  And I'll go through

1  all of my concerns, and then you all can just tell me and we can

2  try to come to -- that seemed to be a very large discrepancy.

3      The other two are the defendant's disclosure.  Defendants

4  say they only need two months.  You want to give them almost six

5  months.  And I can understand it if you want to -- if plaintiffs

6  want to argue for what they need, plaintiffs' disclosure, again,

7  you asked for 150 months.  So roundabout five months.  But then

8  the defense requests two months.

9      So I guess my -- Mr. Stone is very correct.  I don't like

10  motions to continue.  So if it's possible that you're going to

11  need this amount of time, I would prefer you ask for it and

12  agree to it ahead of time.  But where it's disputed, then I have

13  to come in and make a decision.  I will tell you, if I resolve a

14  dispute and then you find that you need more time, I'm not going

15  to be as smiley about it.

16      So, you know, just what's realistic in this?  The 24 months

17  after close seemed a bit long to me, but you all know your cases

18  and prosecute these more than I deal with them.

19      MR. STONE:  We've got two parallel cases running along

20  right now.  We've got the state claim with Phoebe, the Phoebe

21  entities, on one hand, and that involves a lot of different

22  doctors, and we've got this one in your court running along on

23  this other track.

24      What we're trying to do, to some extent, the best we can, is

25  to try to -- everybody do depositions at one time and let's

DECEMBER 15, 2022

1   don't do repeat depositions.  Because that doesn't make a whole
2   lot of sense.  It just takes a lot more time, and it also costs
3   a lot more money.  So --
4           THE COURT:  So part of the extension is to try to align
5   the track with the state track.
6           MR. STONE:  That's true.  And the other part of it is
7   there's probably going to be some apportionment defenses raised
8   in this case.  I mean, I would be surprised if not because we've
9   got a lot of different doctors involved in it, and every one of
10  them is going to have their own experts.  So this is going to be
11  a -- these cases are just plentiful with experts.  I mean, it's
12  amazing the number of expert depositions we have to take in
13  these cases.  And that's even with just like two defendants.
14          THE COURT:  Yeah, and I think you mentioned at least
15  ten to 12 in here.
16      So I guess, understanding plaintiffs' position, what's the
17  defense's opposition to the extended timeline?
18          MS. SHOEMAKER:  Yes, your Honor.  We feel like a
19  13-month discovery period is already almost double the typical
20  time it takes to litigate cases in these Middle District tort
21  cases.  So we feel like 13 months was allowing for additional
22  time for depositions, for, you know, travel and for experts, et
23  cetera.
24      Ultimately, we feel like we shouldn't slow down the federal
25  case in order to align with the state case.  If that is a

1  concern, about the logistics of having parties in two places,

2  then we've mentioned to plaintiffs that we can join everybody

3  into the federal case, and then we're all under the same

4  umbrella, and that might make things go faster.

5      So we really just have an interest in trying to get it done,

6  trying to be efficient.  Lance and I are a great team.  We think

7  we can work collaboratively with everybody and get it done.  So

8  we just felt like 13 months was sufficient and didn't see the

9  need to ask for two years, especially trying to work with a

10  state case that could theoretically be a part of this one.

11      MR. STONE:  Well, that's our choice, not hers, about

12  whether we want to (inaudible).

13      THE COURT:  I mean, it is your choice, but then you're

14  asking the schedule to be bended towards your choice.  So her

15  point is that's --

16      MR. STONE:  Well, let me --

17      THE COURT:  Mr. Stone, let me finish real quick because

18  I was about to ask a question.  So there's going to be some

19  overlap between the two cases.  Do you all know where the

20  overlap is going to be at this time?  And the reason I ask that

21  is because 24 months just seems a little -- it's a long time,

22  it's delaying the case, it's drawing it out, and if the primary

23  or a primary purpose, which I think make sense, is to try to

24  make it the most efficient possible, one of those ways is to

25  identify the people that are going to overlap and basically

DECEMBER 15, 2022

1  prioritize that.

2      Certainly I don't know what the state schedule is, if the
3  state discovery schedule has already been set.  And I have no
4  control over that.  But if it's not going to be everybody, is it
5  not possible to basically prioritize and get the federal part
6  done or the overlapping part done within a shorter time period
7  than the 24 months requested?

8      MR. AUCOIN:  Judge, I can speak to that.  This is
9  Edward Aucoin.  Unfortunately, all of the witnesses, there's not
10 really a way to segregate what witnesses apply to one case as
11 opposed to the other.  All of the witnesses -- because the docs
12 in this case were involved pretty much through the entire
13 delivery -- all of the nurses and the other witnesses from the
14 state case are going to have to testify in this case because
15 they all are pieces of the same puzzle.  The same thing, all the
16 docs in this case will have to testify in the state case.  You
17 can't really -- I'd say there may be one witness that might be
18 different and that would be the 30 --

19     THE COURT:  Ms. Shoemaker, let me ask this question.
20 You said the 13-month offer that you all recommended or
21 suggested is double the time that you've previously used to try
22 cases of this nature?

23     MS. SHOEMAKER:  What I mean by that is that the court
24 typically recommends a 180-day discovery period.  And so we took
25 that and doubled it.  Lance and I don't have as much specific

1  experience in the birth trauma field like Mr. Stone certainly

2  does.  And Mr. Aucoin as well.  But we handle a lot of FQHC

3  cases.  We have a lot of medical malpractice cases.  And, again,

4  typically, in the Middle District, we see a recommended 180-day

5  discovery period.  So we felt like doubling that --

6           THE COURT:  So it's not specific to the case, but it

7  goes to our rules.

8           MS. SHOEMAKER:  Correct.

9           THE COURT:  So, because there are certain types --

10 there are certain cases that take it out of the heartland.  And

11 so both parties seem kind of set for various reasons.  I would

12 like -- Mr. Stone or, I'm sorry, Mr. -- is it Aucoin?

13          MR. AUCOIN:  Aucoin.  Aucoin.

14          THE COURT:  Aucoin.  Okay.  Do you all have a federal

15 case, an exemplar or two that I can look at to get an idea

16 better of what time was actually needed to do this -- I mean, I

17 can tell you, I've never done one of these that I'm aware of.

18 And maybe I have but just don't -- that's actually gone to

19 resolution?  So I can determine what is actually reasonable.

20 Because right now, everything seems to be fairly speculative.

21     And as Mr. Stone knows, my general rule is I don't like to

22 give continuances.  I like for you to ask for it upfront.  But

23 where I have to make a decision, I would like to have some more

24 information.  So are there some cases you can point me to that I

25 can look at the discovery, the course of discovery in that so

1  that I can get an idea of what actually was necessary?

2       MR. AUCOIN:  Sure, your Honor.  We have a case that

3  resolved several years back out of North Dakota, federal.  And

4  it was a birth injury, a lot of the same issues.  I could surely

5  share with your Honor if needed the, you know, scheduling orders

6  there to show you the amount of time that was needed but --

7       THE COURT:  And did you use a similar amount of time in

8  that case, the 24 months?

9       MR. AUCOIN:  We did, your Honor.  I believe it was even

10  a little bit more because there were three separate parties

11  in -- excuse me -- two separate parties, not just the United

12  States, in the federal case.  And so it was even a little bit

13  longer.

14      And just as in this case, we had, I believe, in that case 12

15  expert witnesses, and the defendants had nine or ten expert

16  witnesses.  And when you factor in the examinations that the

17  experts will want to do of the (inaudible) and the testing that

18  they need to do, it extended beyond that, but this was a case

19  pending in the U.S. District in North Dakota --

20      THE COURT:  What I'm going to ask you all to do is, if

21  you can pull that case and at least one other exemplar, and I'd

22  like for you to share it both with the Court and share it -- I'm

23  assuming you haven't shared this with Ms. Shoemaker and

24  Mr. Simon.

25      MR. AUCOIN:  We did not discuss that, your Honor.

1          THE COURT:  Because it seems to be, I mean,

2    understanding that there are similar cases -- there may be

3    something unique about these.  I have no problem admitting when

4    I'm not an expert.  I don't know.  And so there may be

5    something --

6          MR. STONE:  Most of them --

7          THE COURT:  I'm sorry?

8          MR. STONE:  I said most of these we've done have been

9    in the state court system, I mean, so we've got a lot of case

10   scheduling orders we can show you.

11         THE COURT:  So, and I don't want to just see the

12   scheduling order, but I want to see the actual, how it

13   progressed.  You know, were continuances needed, when were

14   things actually done, because right now, you're asking the

15   defendant to just agree that this amount of time is necessary

16   without, you know, them having had, you know, the benefit.

17         And, you know, there is an interest in a timely resolution

18   of these cases.  And I will tell you, my gut reaction to seeing

19   this two years is why in the world are you looking at two years

20   on this.

21         And when I've had people ask for that extended amount of

22   time, either it's been agreed upon and both parties have

23   explained based on their past experience why this is necessary,

24   but the civil rules set the 180 days as a baseline, understood,

25   but there's got to be, when you're asking basically to go

1   quadruple that, there needs to be some understanding why.

2      So I'm going to ask the parties to meet and confer once

3   again, but after you all have provided some exemplar cases, and

4   it can be both state and federal, so that you all can discuss

5   about, discuss what is really reasonable and necessary.

6      And certainly after doing that, if you can't come to an

7   agreement, I will jump in and I'll make the decision, now that I

8   understand why.  But I also need additional information in order

9   to make a decision.  Because there is a dispute here.  Because I

10   just, I don't know.

11      MR. STONE:  Sure.

12      THE COURT:  I could be arbitrary and just pick a

13   number, but that doesn't seem fair to anybody.

14      MR. STONE:  The 180 days is sort of like a default

15   position.

16      THE COURT:  I know.  It's the baseline.  It's what the

17   civil rules require.  We go with it.  But you all can, you know,

18   design around it.  But where there is a dispute, there has to be

19   some basis for me to make a decision.  And what I'm saying is,

20   you're saying this is normal; she's saying, well, in this kind

21   of case, this is all we need.  And I'm saying I just don't know.

22      MR. STONE:  She told me before you got on the TV here

23   that they've never handled a case like this before.

24      THE COURT:  And she did say that.  She said she'd never

25   handled a case like this before, but she's handled similar

1  malpractice in such cases.  She's been completely forthright.

2  But the fact that she hasn't handled them doesn't mean that she

3  has to acquiesce to what you want.  So, again --

4       MR. STONE:  I understand that.

5       THE COURT:  I'm going to ask --

6       MR. STONE:  If you want to talk about delays, if you

7  want to talk about delays --

8       THE COURT:  I don't want to talk about delays.  I don't

9  want to get into anything like that right now.  I have a feeling

10  there may have been some issues and such there.  I don't want to

11  do that.

12     What I do want to do is make sure that the information is

13  shared.  So I would ask -- it's coming up on the holidays.  I

14  don't necessarily want to force you all to do this before the

15  holidays.  I don't know what people's schedules are.  But what

16  is a reasonable time for you all to, one, for plaintiffs to kind

17  of provide these exemplars so that -- and, again, not just the

18  scheduling orders.  I want to see what really happened.

19     Because I issue scheduling orders and then -- and Mr. Stone

20  knows I hate doing this -- you know, in cases with five

21  extensions.  That makes me -- that annoys me.  And so -- unless

22  there's a really good reason.  Because then it looks like you

23  are not diligently prosecuting or there's some obstruction going

24  on.

25     And so Mr. Stone is very correct.  I prefer to give all the

DECEMBER 15, 2022

1  time necessary upfront.  But, again, at this point, I don't

2  know.  So when can you all, one, provide the exemplars and then,

3  two, reasonably meet and confer given that the holidays are

4  coming up in the next ten days?

5       MR. AUCOIN:  I can do it within two weeks, your Honor.

6  It's not that hard to collect and send --

7       THE COURT:  I'm sorry.  You said collect and send.  I'm

8  sorry.  I didn't mean to cut you off.

9       MR. AUCOIN:  No, I'm just saying, you were asking for

10  the exemplars.  I have, you know, them in the file.  I can

11  submit them to the Court and submit them to opposing counsel.  I

12  can do that within the next 14 days.  Not a problem.

13      And I can tell you, in the federal case, I was just looking

14  at it while your Honor was speaking, you know, the initial

15  scheduling plan was entered by the parties.  And then there were

16  at least one, if not two, amended case management order that

17  extended it out because it was needed.  But I'll share that

18  with, you know, counsel and the Court.

19      When you said you just don't want the case management or the

20  scheduling order, what else would your Honor like us to submit,

21  I guess --

22      THE COURT:  As long as they have access to it.

23  Certainly you can provide a case number.  But I want everyone to

24  be able to see.  For example, like you said, there was an

25  initial case management order and then you had three extensions,

DECEMBER 15, 2022

1  so that kind of thing, so that we can have a realistic view of

2  it took us this long to get through discovery.

3      You know, one thing I know that we're having a hard time,

4  especially post COVID -- and everybody's telling me we're about

5  to have another COVID rush -- is getting doctors when you're

6  trying to get depositions and getting medical records.  Because

7  those are the things, you know, certainly, and rightly so, when

8  there is a medical emergency, legal cases fall back in the order

9  of priority.  So I recognize that that might happen, but we also

10  have to take into account we're two years down the line.  We

11  know how long it takes to really get a doctor's deposition in.

12  That's longer than it used to be.

13      MS. SHOEMAKER:  Your Honor, we also, my experience with

14  birth trauma cases may be limited, but our office handles these

15  regularly.  For example, my colleague handled one recently and

16  discovery took about 14 months.  So should we wait for

17  Mr. Aucoin to send his sort of submission and then we respond to

18  it or --

19      THE COURT:  No, because you don't have to write.  Just

20  send them to us.  If you have some cases that we should -- well,

21  actually, I would prefer, if you're going to email them to the

22  Court, that you do -- you can do yours, of course.  Just be on

23  the same email chain.  Don't send separate ones.  Because it's

24  easier to keep up with that.

25      But, again, if you have other exemplars and so when we come

DECEMBER 15, 2022

1   back and have this discussion, I can be educated enough to

2   really make a decision, that would be great.  So, yes, certainly

3   send yours in.  They don't necessarily need to be in response,

4   but I'd ask that when you send it to Ms. Davis, you keep it on

5   the same email chain.

6           MS. SHOEMAKER:  Sure.

7           THE COURT:  But then how long, reasonably, can you all

8   set another meeting, a time to meet and confer, to see if you

9   all can resolve it once all this information is shared back and

10  forth?

11          MR. AUCOIN:  As soon as we exchange it.  I'm pretty

12  open beginning the, you know, first of the year.  So if I can

13  get this, your Honor, 14 days before the end of the year.  That

14  first week in January I can tell you that I'm pretty open.  I'll

15  be away at a conference, but the conference ends at 1 p.m. every

16  day and I have every afternoon, so.

17          THE COURT:  So you all -- can the government also be

18  prepared to have this discussion within the first week?

19          MS. SHOEMAKER:  Yes, your Honor.

20          THE COURT:  All right.  So if you all will set a time.

21  If you can meet and confer, I will say, by -- today's a

22  Thursday.  So if you all can meet and confer.  Advise, if you

23  would, advise the Court by the 13th whether or not you've been

24  able to come to a resolution.  Or if you've been able to narrow

25  the issues and you only have one or two for me to decide, let me

1  know.

2      If you can't do it, we will set a hearing, another one.

3  We'll get back on here as soon as possible, and I will just make

4  the decision.  But right now, it doesn't seem like everybody is

5  working on the same pot of information, and I think another meet

6  and confer would make sense there.  So please advise the

7  Court --

8          MR. STONE:  The 13th?

9          THE COURT:  Yeah.  I need stuff by the 13th.

10         MR. STONE:  Of when?

11         THE COURT:  I'm sorry?

12         MR. STONE:  Of January?

13         THE COURT:  Yes, sir.

14         MR. STONE:  January?

15         THE COURT:  Yes, sir.  Because I don't want it to last

16 much longer, but, I mean, you all may tell me on the 6th or

17 whenever it is you meet that you all have worked it out, but if

18 not, let me know, and we will set a hearing as soon as possible

19 so that I can just -- or, well, if you want to have further

20 argument.

21         MR. STONE:  Is there any reason we can't be serving

22 written discovery during that period of time too?

23         THE COURT:  No.  I think there's no reason.  I think

24 you should already go ahead and start the process because it

25 will make it end quicker.  So I would say go ahead and start

DECEMBER 15, 2022

1  your process.  Because they're just going to set the deadlines
2  for when it's going to end.
3        MR. SIMON:  Judge?
4        THE COURT:  Yes, sir.
5        MR. SIMON:  Sorry, Judge.  Thank you.  I appreciate,
6  you know, that the Court is looking to the actual facts here to
7  then work backwards and figure out the time that we need based
8  on what we actually have to accomplish.
9        I just wanted to flag for your Honor that I think one of the
10 more abstract issues that is in part also driving the period is,
11 again, this coordination that I think plaintiffs' counsel
12 expressed with the state court action.
13       And as you might remember, Judge, all of the parties were
14 before you in this case originally.  And then due to lack of
15 exhaustion, you know, the remaining parties were sent, you know,
16 down to state court.  And so now we're sort of in this
17 bifurcated world.
18       But as far as I understand from plaintiffs' counsel, the
19 cases are at the same sort of the genesis, if you will.  And so,
20 you know, I think -- we'll discuss amongst ourselves to try and,
21 you know, extrapolate out how much that coordination piece is
22 being factored in as far as, you know, the two-year time period
23 here.
24       But one thing that I wanted to tell the Court and just be up
25 front about is, you know, to the extent that the government

1  believes that it makes sense for all of the parties to be
2  together back in the federal courthouse, we were, before, we
3  were looking at our options on joinder, because, as you saw, we
4  have a deadline on joinder in there, and Mr. Stone mentioned,
5  you know, starting with discovery and sort of getting off to the
6  races.  And I think that's prudent, but I just wanted to note
7  for the Court that that is something that we're looking at.  And
8  I don't want the Court to be blindsided, you know, by that as
9  we're looking through and factoring in, you know, operating in
10 two forums but then actually coming together and having a time
11 frame that's not reasonably calculated for that, you know,
12 contingency.
13      THE COURT:  Right.  And I'm glad you flagged that.  I
14 can't -- right now, I'm not actually seeing how that is going to
15 affect it, but that is -- I mean, certainly, you know, you get
16 to try your case the way you want to try it until, of course, I
17 get that motion for joinder, but I'm certainly not going to
18 prejudice any party.
19      My saying that you can go ahead and start discovery is not
20 meant to prejudice any party with regard to discovery.  I know
21 there was a deadline in there.  And if I do forget to factor it
22 in given this one-month delay and what I'm saying now, just make
23 sure that you all stay up on top of me and bring that issue up
24 again.  I will not be offended if you bring it up again just to
25 remind me that that is outstanding out there.

1    Certainly, I think, you know, efficiency's sake speaks

2    towards joinder, but, again, you know, if you want to have

3    parallel cases, you want to have two bites of the apple, I can't

4    say that that's not appropriate unless the rules say it.  But I

5    think --

6         MR. STONE:  At this juncture, there's really no basis

7    for federal jurisdiction over the state court case.  Because it

8    didn't start off as a removal this time.  This is -- it was all

9    back in state court like it was supposed to be (inaudible).

10        THE COURT:  Well, I mean, I understand you saying that,

11   but I guess part of the thing is, you get to make that decision,

12   but then you don't get to then tie the hands of the federal case

13   because you prefer to be in state court.  Or whatever it is.

14        I have to take into account -- you can't, on one hand, argue

15   efficiency, let's keep if it in line, and then on the other hand

16   say we want two tracks.  So, I mean, you can, but I'm going to

17   take all of it into account when I'm making my determination.

18   I'm not going to lengthen this case to stay on track with the

19   state case if it doesn't make sense for the federal case, I

20   guess is what I'm saying.

21        MR. STONE:  I understand that.  There's one other

22   aspect to what we're talking about here because the defense in

23   this case in federal court is probably going to want to explore

24   these apportionment issues.  And that's going to take some time.

25        And what may be happening right here is they may be tying

1    their own hands by asking for too short a period of time.  And

2    so it wouldn't surprise me at all before we get to the end of

3    this that it would be the defense coming in and asking for more

4    time.

5          THE COURT:  And if that happens, I will remember and

6    I'm sure you will remind me.  We already know that the

7    apportionment issue may be an issue.  So coming off later and

8    saying I don't have enough time is not going to really be a

9    persuasive argument when I'm telling you to consider it now and

10   build it in.  So that point is well taken, Mr. Stone.

11         MR. STONE:  Go ahead, Ed.

12         MR. AUCOIN:  Oh, yes.  Sorry, your Honor.  Just

13   something that Mr. Simon addressed that I want to make kind of

14   clear, I guess, if I can, and I thought I made this clear with

15   my conversation with Ms. Shoemaker previously, we are not trying

16   to extend the federal matter to match the state case.  Just the

17   opposite.  We have been delaying the state case so that we could

18   get a federal schedule under your Honor so that then we could

19   match the state case.

20         THE COURT:  Ah.  Okay.

21         MR. SIMON:  And I've made that pretty clear, I thought,

22   in our conversations.  In the state case, typically -- and you

23   will see this in the exemplars that we send your Honor -- the

24   state case typically takes longer than 24 months in Georgia.

25   And that's been our experience in the four or five cases in

DECEMBER 15, 2022

1   Georgia over the last three to four years.

2       The 24 months that we are proposing is shorter than it takes

3   for a state case in Georgia with this type of facts and these

4   type of issues and experts.  We're putting off the state case so

5   that it can roll with the federal case, knowing that the federal

6   case would be a shorter schedule.  And that's what we've asked

7   for.

8       THE COURT:  That is fully understood.  So what I would

9   also ask is, again, other than this case, which came and left

10  and now is back, I don't know that I've tried one of these

11  through or how far I've taken one of these, so, you know, if you

12  have any guidance -- and I'll go back myself and look to see if

13  there's any guidance on scheduling these types of cases, but if

14  you have anything that you think it would be informative for me

15  to look at, I will not be offended if you send it along.

16      You know, this seems to be a very both contentious and

17  serious issue for both of you in this litigation, and we all

18  know that discovery, getting it right at the beginning can help

19  smooth a case.  So what I'm trying to do is make sure that I get

20  it right.  So if in addition to sending me these exemplars, if

21  you have anything that you think would be helpful for me to

22  review, feel free to forward them.

23      MR. STONE:  Well, bear one thing in mind also, and that

24  is on this side of the beat, we don't get paid until we get

25  finished with the case.  So we have no interest in dragging it

DECEMBER 15, 2022

1    out any longer than it has to be.

2         THE COURT:  I don't think anybody has ill intent.  I

3    think, though, as this is an adversarial system, we both have,

4    both sides have different priorities.  And that doesn't mean

5    that anyone has any -- you know, I don't think anyone at this

6    point is doing anything inappropriate.  You're advocating as

7    best you can for your client.  I just have to make the decision

8    about how to do it most fairly, so.

9         All right.  So, again, if you all -- I'll expect to hear

10   from you, hopefully, that the Christmas spirit has hit and

11   everything works itself out.  But if it hasn't -- or the holiday

12   spirit, I probably shouldn't say Christmas spirit, if the

13   holiday spirit is hitting you and you all have figured out how

14   to make it work, I'll take that.  If not, I will get a decision

15   out to you -- or we'll have another hearing once I get the new

16   materials, okay?

17        I wish everyone a happy holiday season and a happy new year.

18        (Concluding at 4:07 p.m.)

19

20

21

22

23

24

25

DECEMBER 15, 2022

CERTIFICATE

I HEREBY CERTIFY THAT THE

FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT OF THE PROCEEDINGS.

/S/ Mindy Martin                    JANUARY 23, 2023
MINDY MARTIN, RMR, FCRR
UNITED STATES COURT REPORTER
Albany, Georgia  31701
Phone:  229-405-6818