IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

KYDAISHA BURTON, individually and as
Mother, Next Friend, and Natural Guardian
of K.B., her minor child, and KESHAW
CAMPBELL, individually,

    Plaintiffs,

v.

UNITED STATES OF AMERICA,

    Defendant.

Case No. 1:21-CV-17 (LAG)

**UNITED STATES' REPLY IN SUPPORT OF MOTION TO JOIN**

In their second attempt to respond to the United States' motion to join (*compare* ECF No. 36 *with* ECF No. 45), Plaintiffs argue that joinder is not appropriate because (a) joint tortfeasors are not indispensable parties under Rule 19, and (b) joining the State Court Defendants would "complicate" this case. For the reasons set forth in the United States' Motion to Join and in the reply below, the United States disagrees. The State Court Defendants are active participants who should be joined under Rule 19, and their addition would not complicate the case in any way not previously contemplated by the parties and the Court.

1. <u>The cases cited by Plaintiffs are distinguishable.</u>

Plaintiffs' "really brief response" (ECF No. 45 at 1) summarily cites several cases that they allege support their position opposing joinder. But all of the cases on which they rely are distinguishable.

Initially, Plaintiffs rely heavily on the recent case of *Deaton Holdings, Inc. v. Reid* and claim it to be dispositive on the issue of joinder. *See* No. A23A0005, 2023 WL 3673246, at *2 (Ga. Ct. App. May 26, 2023). But, contrary to what Plaintiffs would lead the Court to believe, that case does not control here. *Deaton Holdings* arose out of an automobile accident. *Id.* There, the plaintiff-passenger who was injured by a turning vehicle chose not to sue additional drivers and vehicle owners who were arguably involved in the facts related to the accident. *Id.* Denying the defendant's joinder motion, the court of appeals held that the drivers and vehicle owners were not indispensable parties required to be joined as defendants because they were merely routine joint tortfeasors. *Id.*

In contrast, in this complex medical malpractice action, the State Court Defendants were not routine joint tortfeasors as in *Deaton Holdings*. Rather, the State Court Defendants were "active participants," like those discussed in *Laker Airways, Inc. v. Brit. Airways, PLC*. 182 F.3d 843, 847 (11th Cir. 1999). In *Laker Airways*, the Eleventh Circuit recognized that "a joint tortfeasor will be considered a necessary party when the absent party 'emerges as an active participant' in the allegations made in the complaint that are 'critical to the disposition of the important issues in the litigation.'" 182 F.3d at 848 (citation omitted).

Plaintiffs make no attempt to distinguish *Laker Airways*—a tacit acknowledgment that the State Court Defendants are, indeed, central figures in the allegations. Here, the interest of the absent parties (*i.e.*, the State Court Defendants) aligns this case much more with *Erdman v. United States* (which Plaintiffs also failed to address in their response) than *Deaton Holdings*. *See* 3:21-cv-75-CAR, 2022 WL 1747943 (M.D. Ga. May 31, 2022). In

2

*Erdman*, this Court found that joinder was appropriate because the absent party was an "active participant" in the alleged events. *Id.* at *2. The same analysis holds here.

More specifically, in this case, the care provided by the State Court Defendants and the federal Defendants was intermingled and co-occurring over an extended period of time. In some respects, the care provided by the state and federal defendants was more like a ping-pong match—responsibility for Ms. Burton's care bounced back and forth between providers in the weeks surrounding Ms. Burton's labor and delivery. Critically, during Ms. Burton's labor and delivery at Phoebe Sumter on October 22, 2017, Ms. Burton received care from the State Court Defendants and, concurrently, from providers whose vicarious liability flows to the United States in this action (*i.e.*, employees of Americus OBGYN).

Plaintiffs' Complaint demonstrates the back-and-forth between medical providers showing that the State Court Defendants are "active participants." According to the Complaint, Ms. Burton received routine prenatal care from Americus OBGYN beginning in May 2017 (ECF No. 3 ¶¶ 38-40). She then was admitted to Phoebe Sumter Medical Center for overnight observation in September 2017 (ECF No. 3 ¶¶ 41, 43). She returned to Americus OBGYN for another prenatal visit on October 4, 2017 (ECF No. 3 ¶ 45). Next, Ms. Burton was back in the care of Phoebe Sumter when she appeared on October 22, 2017, in labor (ECF No. 3 ¶ 47). The on-call providers (who were not present at the hospital when Ms. Burton initially appeared) included CNM Settle and Dr. Healy (both of whom were employed by Americus OBGYN) (ECF No. 3 ¶¶ 53, 54). During delivery, care was provided concurrently by Phoebe Sumter nurses and Americus OBGYN

providers (ECF No. 3 ¶¶ 47-85). After delivery, Ms. Burton and K.B. were sent from Phoebe Sumter to Phoebe Putney via hospital transport, where they remained until October 27, 2017, and November 24, 2017, respectively (ECF No. 3 ¶¶ 85, 94, 105).

The timeline makes clear that the defendants played overlapping roles in Ms. Burton's continuum of care. During K.B.'s delivery, the care by the federal Defendants and the State Court Defendants was concurrent. More specifically, nurses from Phoebe Sumter provided labor and delivery services to Ms. Burton under the direction of CNM Crystal Settle and Dr. Kenneth Healy—both employees of Americus OBGYN. While the allegations in the federal case focus on the alleged negligence of the Americus OBGYN providers, it is impossible to evaluate their treatment in a vacuum without considering the acts and omissions of Phoebe Sumter and Phoebe Putney employees, who treated Ms. Burton before, during, and after her delivery.[1]

Another distinguishing fact between the present case and *Deaton Holdings*: *Deaton Holdings* did not involve a situation where the plaintiff chose to bring two separate cases

---

[1] Of note, Plaintiffs have made allegations covering every phase of Ms. Burton's care. The allegations begin with assertions that Ms. Burton was not properly treated during her prenatal period by the Americus OBGYN providers who saw her. *See* Complaint, ECF No. 3 at ¶¶ 118(a)-118(l); ECF No. 3 at ¶¶ 134(a)-134(h). Plaintiffs also have alleged that Ms. Burton was not properly treated when she was hospitalized at Phoebe Sumter in September 2017. *See* State Court Complaint, ECF No. 38-1, ¶¶ 221, 262. Plaintiffs allege that Ms. Burton's labor and delivery was not appropriately managed by Americus OBGYN providers at the hospital or by the Phoebe Sumter nurses who were initially managing Ms. Burton's care. *See* Complaint, ECF No. 3 at ¶¶ 126(a)-126(i); *see generally* State Court Complaint, ECF No. 38-1. Plaintiffs allege that Ms. Burton was not appropriately monitored during the postpartum period, including during her transport to Phoebe Putney or when she was treated at Phoebe Putney after her transfer to the hospital was complete. *See generally* State Court Complaint, ECF No. 38-1. Beyond Ms. Burton's injuries, Plaintiffs have also alleged that K.B. was not properly treated during the labor and delivery process at Phoebe Sumter, nor was he properly treated during his neonatal care at Phoebe Sumter and Phoebe Putney. *See generally* State Court Complaint, ECF No. 38-1.

in two separate forums based on the same set of facts. Instead, that case involved a plaintiff who chose not to sue certain tortfeasors at all. That is, quite simply, not the situation in the case at hand. The same point can be made for other cases cited by Plaintiffs. For instance, in *Sloan v. Southern Floridabanc Fed. Sav. & Loan Ass'n*, the court held that joinder was not applicable where liability was joint and several. *See* 197 Ga. App. 601, 398 S.E.2d 720 (1990). But, importantly, that case was about Texas limited partnerships which made promissory notes governed by certain guaranties that included express language about several liability; it did <u>not</u> involve a complex medical malpractice case where the plaintiffs were attempting to litigate two separate cases in two separate forums. *See id.* Similarly, the string of cases cited by Plaintiffs in footnote 2 of their brief merely stands for the principle that being a joint tortfeasor is not enough, standing alone, to justify joinder under Rule 19. *See* ECF No. 45 at 2 n.2. The United States does not dispute that principle; it just does not apply here where the State Court Defendants are more than routine joint tortfeasors. <u>None</u> of the cases cited by Plaintiffs involve a fact pattern like this case in which there are parallel federal and state cases and Plaintiffs seek to sue parties in separate places based on the same facts.

In short, Plaintiffs allege that numerous providers breached the standard of care in multiple ways while treating Ms. Burton and K.B. over the course of a months-long period of time. That stands in stark contrast to *Deaton Holdings* or any of the other cases cited by Plaintiffs. Here, the State Court Defendants were "active participants" in the weeks leading up to Ms. Burton's labor and delivery, during the labor itself, and in the weeks following Ms. Burton's delivery. They should be joined under Rule 19.

2. <u>There will not be any unforeseen difficulty with discovery.</u>

Plaintiffs claim that adding in the State Court Defendants would "only complicate this case further for no reason." ECF No. 45 at 3. But Plaintiffs fail to acknowledge that the deadline to join parties was contemplated by the Court in its scheduling order. *See* ECF Nos. 24, 39. And, critically, Plaintiffs recently sought—and received—a stay of the litigation for the very reason of maintaining the status quo while the joinder motion was evaluated. ECF No. 39. Thus, joining parties was previously contemplated by the Court and any potential "complication" has been mitigated by the stay.

Further, Plaintiffs fail to acknowledge that they originally named both the State Court Defendants and the federal Defendants in the same lawsuit—not two separate cases. In fact, keeping the state and federal cases separate would likely cause more difficulty with discovery than joining the cases together. Plaintiffs have recognized from the beginning that discovery would be impossible to separate. Counsel for Plaintiffs stated during a December 2022 conference with the Court:

> … there's not really a way to segregate what witnesses apply to one case as opposed to the other. All of the witnesses – because the docs in this case were involved pretty much through the entire delivery – all of the nurses and the other witnesses from the state case are going to have to testify in this case because they are all pieces of the same puzzle.

Scheduling Conference Transcript, ECF No. 23 at 7:9-15. Plaintiffs' counsel went on to say that "all the docs in [the federal case] will have to testify in the state case. You can't really – I'd say there may be one witness that might be different …." *Id*. at 7:15-18. These statements demonstrate that joinder would likely make discovery easier on the parties, not harder.

Additionally, Plaintiffs speculate in their response brief that there might be difficulty ahead because Ms. Burton's claims might somehow be barred by Georgia's five-year statute of repose if the State Court Defendants are joined in the federal case. *See* ECF No. 45 at 4. But Plaintiffs provide no support (legal or factual) for their argument. They surmise that a dismissal in federal court "might have the effect of causing a dismissal with prejudice in the state court" (ECF No. 45 at 4), but they fail to explain how or why that dismissal might occur. The only citations in support of their argument relate to the Georgia statute of limitations and statute of repose generally. *See* ECF No. 45 at 4. Plaintiffs do not cite any case where claims have been deemed barred following joinder, and the United States has not found any case law that recognizes the dismissal of claims on statute of limitations or statute of repose grounds as a direct result of joinder. The Court should not deny the United States' motion to join based on Plaintiffs' speculative and unsupported fears.

3. Request to File Third-Party Complaint.

The United States wishes to clarify the footnote in its Motion to Join. In footnote 1 of the brief (ECF No. 30 at 2), the United States requested in the alternative to joinder that the Court allow the United States to file a third-party complaint against the State Court Defendants under Rule 21. The United States now clarifies and flags for the Court that, if joinder is not authorized under Rule 19, then to address the apportionment barriers discussed in its motion, Defendant may seek leave to file a third-party complaint under

7

Rule 14 (not Rule 21, as previously stated). Impleader, in essence, would be the United States' next best procedural option to address the issue of contribution in a single action.[2]

In conclusion, for the above reasons and those articulated in its motion, the United States respectfully requests that this Court exercise its authority under Rule 19 (or, in the alternative, under Rule 14) and grant the United States' motion to join the State Court Defendants as party-defendants in this federal action—reuniting the parties just as they were when Plaintiffs initially filed suit against all of the defendants in one case.

Respectfully submitted this 22nd day of August, 2023.

                        PETER D. LEARY
                        UNITED STATES ATTORNEY

By:    *s/ E. Bowen Reichert Shoemaker*
        E. BOWEN REICHERT SHOEMAKER
        Assistant United States Attorney

---

[2] As one sister district court within the circuit observed:

> Federal Rule of Civil Procedure 14 allows defendants to accelerate the common law right of contribution via impleader. 3 James Wm. Moore et al., Moore's Federal Practice § 14.05[2] (3d ed. 2007) [hereinafter "Moore's"]; *Andrulonis v. United States*, 26 F.3d 1224, 1234 (2d Cir. 1994). "When the governing substantive law permits contribution among joint tortfeasors regardless of whether plaintiff has sued them all in the first instance, it is clear that defendant can bring in other joint tortfeasors to enforce its claim for contribution." 3 Moore's § 14.07.

*Landberg by & through Landberg v. Universal Trailer Corp. Horse/Livestock Grp.*, No. 1:06-CV-2971-BBM, 2008 WL 11334018, at *3 (N.D. Ga. Mar. 14, 2008); *see also Drake Towing Co. v. Meisner Marine Const. Co.*, 765 F.2d 1060, 1068 (11th Cir. 1985) *abrogated on other grounds recognized by Cranford v. United States*, 466 F.3d 955, 958 (11th Cir.2006) ("In a case that threatens mutual liability, the defendant may implead a third-party defendant 'who may be wholly or partly liable, either to the plaintiff or to the third-party plaintiff, by way of remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences.' Fed.R.Civ.P. 14(c)."); *Stanford v. United States*, No. CV 12-93-ART, 2012 WL 12924815, at *1 (E.D. Ky. Oct. 18, 2012) ("[T]he United States is entitled to apportionment or contribution from all nine third-party defendants for any damages it may owe the Plaintiff or Intervenor Plaintiff. . . . These theories all support impleading the third-party defendants because they channel liability for Sanford's injury away from the United States to the third-party defendants.").

        Georgia Bar No. 222443
        LANCE SIMON
        Assistant United States Attorney
        Georgia Bar No. 447643
        TODD P. SWANSON
        Assistant United States Attorney
        Georgia Bar No. 496989
        UNITED STATES ATTORNEY'S OFFICE
        Post Office Box 1702
        Macon, Georgia 31202-1702
        Telephone: (478) 752-3511
        Bowen.Shoemaker@usdoj.gov
        Lance.Simon@usdoj.gov
        Todd.Swanson@usdoj.gov