**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

KYDAISHA BURTON, Individually and          :
as Mother, Next Friend, and Natural        :
Guardian of K.B., her minor child, *et al.*, :
                                           :
      Plaintiffs,                          :
                                           :
v.                                         :          CASE NO.: 1:21-CV-17 (LAG)
                                           :
UNITED STATES OF AMERICA,                  :
                                           :
      Defendant.                           :
_____ :

**ORDER**

      Before the Court is the Government's Motion to Dismiss Counterclaims (Doc. 66). Therein, the Government seeks to dismiss Third-Party Defendants Phoebe Putney Health System, Inc., Phoebe Sumter Medical Center, Inc., Phoebe Putney Memorial Hospital, Inc., Jack D. Owens, M.D., Sirlena E. Brown, N.P., and Fleming Burroughs, M.D.'s counterclaims under the Declaratory Judgment Act, 28 U.S.C. § 2201. (Doc. 62). For the reasons below, the Government's Motion to Dismiss is **GRANTED**.

**BACKGROUND**

      On October 22, 2019, Plaintiffs Kydaisha Burton, on behalf of herself and her minor child, K.B., and Keshawn Campbell, K.B.'s father, filed an action in the Superior Court of Dougherty County, Georgia. *See Burton v. Phoebe Putney Health Sys., Inc.* (*Burton I*), No. 1:20-CV-29 (LAG), (Doc. 1-1) (M.D. Ga. Feb. 14, 2020). Plaintiffs raised medical negligence claims against multiple healthcare entities, doctors, nurse practitioners, and certified nurse midwives that provided medical care to Burton and K.B. during Burton's pregnancy, labor, and delivery in 2017 (the *Burton I* Defendants). *Id.* The *Burton I* Defendants included: Phoebe Putney Memorial Hospital, Inc.; CareConnect Health, Inc., doing business as Americus OBGYN; Ajay S. Gehlot, M.D.; Kenneth Healey, M.D.;

Ashley Wilson, C.N.M.; Crystal Settle, C.N.M.; Jack D. Owens, M.D.; Sirlena E. Brown, N.P.; Fleming Burroughs, M.D.; and twenty-six John and Jane Does. *Id.*

On February 14, 2020, the Government removed the action to this Court and substituted itself as a defendant for Americus OBGYN, Dr. Geholt, Dr. Healey, C.N.M. Wilson, and C.N.M. Settle, who were deemed employees of the Public Health Service. *Id.* at (Docs. 1, 3). On May 14, 2020, the Court granted the Government's motion to dismiss for failure to exhaust administrative remedies and lack of subject matter jurisdiction and remanded the case to the Superior Court of Dougherty County. *See id.* at (Doc. 22 at 1). On June 9, 2020, Plaintiffs filed administrative tort claims with the Department of Health and Human Services, seeking damages for the allegedly negligent treatment of Burton and K.B. by Dr. Geholt, Dr. Healey, C.N.M. Wilson, and C.N.M. Settle at Americus OBGYN. (Doc. 3-1). Plaintiffs filed this action against the Government on January 20, 2021, asserting claims for medical negligence and institutional negligence under the Federal Tort Claims Act. (Doc. 1 ¶¶ 111–42). On March 31, 2022, the Court denied the Government's Motion to Dismiss. (Doc. 15).

On March 31, 2024, the Court granted in part and denied in part the Government's Motion to Join Party Defendants Phoebe Putney Health System, Inc., Phoebe Sumter Medical Center, Inc., Phoebe Putney Memorial Hospital, Inc., Jack D. Owens, M.D., Sirlena E. Brown, N.P., Fleming Burroughs, M.D., "and all other defendants in the state court case currently pending in Dougherty County State Court" as defendants in this case (Third-Party Defendants). (Doc. 50 at 1–2; *see* Doc. 30). The Court determined that the State Court Defendants were not required parties are Rule 19 but that the Government could implead the State Court Defendants via Rule 14. (Doc. 50 at 4–11). The Government filed a Third-Party Complaint on April 26, 2024. (Doc. 53). The Third-Party Defendants filed an Answer and a Motion to Dismiss on July 8, 2024. (Docs. 54, 55). The Government filed an Amended Third-Party Complaint on July 26, 2024. (Doc. 59). The Third-Party Defendants filed an Answer and a Motion to Dismiss the Amended Third-Party Complaint on August 8, 2024. (Docs. 61, 62).

In the Motion to Dismiss, the Third-Party Defendants argued that, because Georgia's apportionment statute applies to the parallel proceeding in state court against the Third-Party Defendants there is no right to contribution in the case pending in federal court. (Doc. 61 at 13–14). Under Georgia law, where the apportionment statute applies, a defendant does not have right to contribution. O.C.G.A. §§ 51-12-33, 51-12-34; *see also Fed. Deposit Ins. Corp. v. Loudermilk*, 826 S.E.2d 116, 128–29 (Ga. 2019) (explaining that damages apportioned under § 51-12-33 are not subject to any right of contribution). In *Alston & Bird, LLP v. Hatcher Management Holdings, LLC*, the Supreme Court of Georgia made clear that the pre-2022 apportionment statute, which was in effect when Plaintiff initiated this action, "does not apply *to cases* with a single defendant[.]" 862 S.E.2d 295, 300 n.2. (Ga. 2021); *see also* O.C.G.A. § 51-12-33(b). Accordingly, the Court denied the Motion to Dismiss, explaining that "[t]he only defendant in this case is [the Government,]" and "[t]here is no grant of authority in the [applicable] apportionment statute to reduce damages according to the percentage of fault allocated to a nonparty in a case with only one named defendant." (Doc. 72 at 4 (quoting *Alston*, 862 S.E.2d at 300)).

The Answer contained three counterclaims under the Declaratory Judgment Act. (Doc. 62 at 19). The Third-Party Defendants seek declarations from the Court regarding the following: (1) Third-Party Defendants' entitlement to apportionment; (2) the Government's entitlement to apportionment and contribution under the circumstances now existing; and (3) the allocation of contribution responsibility. (Doc. 62 ¶¶ 29–63). The Government filed a Motion to Dismiss the Counterclaims on October 7, 2024. (Doc. 66). The Third-Party Defendants responded on November 11, 2024. (Doc. 69). The Government replied on December 9, 2024. (Doc. 71). Thus, the Motion to Dismiss Counterclaims is ripe for review. M.D. Ga. L.R. 7.3.1(A).

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir.

3

2005) (applying 12(b)(6) standard to counterclaims). A claim is plausible on its face if it alleges enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The counterclaim must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. The Court "take[s] the factual allegations in the [counterclaim] as true and construe[s] them in the light most favorable to the plaintiffs" but is "not required to accept the legal conclusions in the complaint as true." *Anderson v. Wilco Life Ins. Co.*, 17 F.4th 1339, 1344–45 (11th Cir. 2021) (citations omitted). A Third-Party Defendant asserting a counterclaim "armed with nothing more than conclusions" cannot "unlock the doors of discovery[.]" *Iqbal*, 556 U.S. at 678–79. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to survive a motion to dismiss. *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

The Government seeks dismissal of all three of the Third-Party Defendants' counterclaims. (Doc. 66 at 4). First, the Government argues that the Court should not exercise jurisdiction over the counterclaims because they serve "no useful purpose" as they are duplicative of the Third-Party Defendants' affirmative defenses. (*Id.* at 4–7). Second, Defendant argues that none of the Third-Party Defendants' counterclaims present issues that can be resolved by declaratory judgment. (*Id.* at 7–11).

The Declaratory Judgment Act, 28 U.S.C. § 2201, states in pertinent part:

> In a case of actual controversy within its jurisdiction, ..., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). "The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Pub. Affairs Assocs., Inc. v. Rickover,* 369 U.S. 111, 112 (1962). In claims

arising under the Declaratory Judgment Act, "a court maintains broad discretion over whether or not to exercise jurisdiction over claims." *Knights Armament Co. v. Optical Sys. Tech.*, 568 F. Supp. 2d 1369, 1374 (M.D. Fla. 2008) (citing *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 136 (2007)). "The Declaratory Judgment Act provides that a court *may* declare the rights and other legal relations of any interested party, not that it *must* do so." *MedImmune, Inc.*, 549 U.S. at 136 (emphasis in original). "The declaratory judgment is an all-purpose remedy designed to permit an adjudication whenever the court has jurisdiction, there is an actual case or controversy, and an adjudication would serve a useful purpose." *Allstate Ins. v. Emps. Liab. Assur. Corp.*, 445 F.2d 1278, 1280 (5th Cir. 1971). "To determine whether the declaratory judgment serves a useful purpose, courts should consider whether resolution of plaintiff's claim, along with the affirmative defenses asserted by defendants, would resolve all questions raised by the counterclaim." *Medmarc Cas. Ins. v. Pineiro & Byrd PLLC*, 783 F. Supp. 2d 1214, 1217 (S.D. Fla. 2011) (citation and internal quotation marks omitted). Furthermore, "courts have typically declined to consider counterclaims for declaratory relief that are duplicative of affirmative defenses." *Dantzler, Inc. v. Hubert Moore Lumber Co.*, No. 7:13-CV-56 (HL), 2013 WL 5406440, at *2 (M.D. Ga. Sept. 25, 2013) (collecting cases).

The Government argues that all three counterclaims are duplicative of the Third-Party Defendants' affirmative defenses and serve no useful purpose because resolution of the contribution claim will answer all questions raised in the counterclaims. (Doc. 66 at 4–7). The Third-Party Defendants argue that the counterclaims are not duplicative because resolution of the Government's claim may not resolve the Third-Party Defendant's claims. (Doc. 69 at 11 (citing *First Mercury Ins. v. First Fla. Bldg. Corp.*, No. 8:20-cv-01929-CEH-AAS, 2021 WL 4169795, *3 (M.D. Fla. Sept. 2021)). According to Defendant "[r]ather than forcing the Third-Party Defendants to appear and defend in this matter despite [the Government] not currently—and perhaps never—having a right of contribution, the Court can much more efficiently determine the pertinent issues by way of ruling on the declaratory relief set forth in the counterclaims." (*Id.* at 13). Furthermore, Third-Party Defendants argue that a motion to dismiss under 12(b)(6) "only test[s] the

validity of the claim, not its redundancy, and a redundant claim should not be dismissed as long as it is valid." (*Id.* at 12 (quoting *Travelers Indemnity Co. v. Garcia*, No. 8:19-cv-2911-T-24AAS, 2020 WL 9065882, *1 (M.D. Fla. Mar. 2, 2020))). Thus, according to the Third-Party Defendants, even if the claims are redundant of their affirmative defenses, in the absence of prejudice to the Government, the Court should exercise jurisdiction over the claims. (*Id.*).

The Eleventh Circuit has articulated a non-exhaustive list of factors for district courts to consider when deciding whether to exercise jurisdiction over a declaratory judgment claim where an underlying state court action involves the same issues and parties. *Ameritas Variable Life Ins. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005). They are: (1) the strength in the state's interest in having the issues raised in the federal declaratory action decided in state courts; (2) whether the judgment in the federal declaratory action would settle the controversy, (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue; (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable; (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; (6) whether there is an alternative remedy that is better or more effective; (7) whether the underlying factual issues are important to an informed resolution of the case; (8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action. *Id.* at 1331.

As to Count I, which seeks a declaratory judgment that the Third-Party Defendants are entitled to apportionment in the pending superior court case, the claim is duplicative of an affirmative defense and serves no useful purpose in this action. (Doc. 62 ¶¶ 29–35). In the third affirmative defense set forth in the Answer, the Third-Party Defendants assert that they are entitled to apportionment pursuant to § 51-12-33 in the Superior Court case, and

thus the Government is prohibited from seeking contribution from them. (*Id.* at 34). The requested declaration would lay a foundation for the Third-Party Defendants' theory that the Government cannot maintain a contribution claim where apportionment is available in a parallel proceeding. (*See id.*). Outside the context of the Third-Party Defendants' attempt to dismiss the contribution claims, the Third-Party Defendants do not argue that this claim serves any other purpose. (*See* Doc. 66 at 13). Considering the *Roach* factors, the Court is not inclined to enter a declaration regarding the Third-Party Defendants' entitlement to apportionment, a state-law issue, in a parallel case pending in state superior court. *Roach*, 411 F.3d at 1331. The resolution of the issue of the Third-Party Defendant's entitlement to apportionment is a question best determined by the state superior court where the Third-Party Defendant's liability is being adjudicated. Furthermore, as the issue of apportionment is one of state law and the Court previously determined that the Third-Party Defendant's entitlement to apportionment in the superior court case has no bearing on the Government's contribution claim in the federal proceedings, the federal court has no special interest in resolving the matter of apportionment in the superior court case. (*See* Doc. 72 at 4). Finally, this Court's decision regarding apportionment would not resolve the controversy being litigated in both courts—the liability of the Government and Third-Party Defendants for Plaintiffs' injuries. Accordingly, this Court shall determine the issues squarely before it and defer to the superior court to resolve the issue of the Third-Party Defendant's entitlement to apportionment in the matter before it. Thus, the Court declines to exercise jurisdiction over Count I.

Likewise, in Count II, the Third-Party Defendants seek a declaration that the Government is not entitled to contribution, and also assert as an affirmative defense that the Government is prohibited from seeking contribution as a matter of law pursuant to O.C.G.A. § 51-12-33. (Doc. 62 at 3–4; *see id.* ¶¶ 36–50, at 19–21). Any determination made regarding the Government's right to contribution from the Third-Party Defendants and, if applicable, the amount of any such contribution would answer all questions raised by the counterclaim for a declaration regarding the Government's entitlement to contribution. Furthermore, the Court already has determined that O.C.G.A. § 51-12-33

does not preclude the Government from asserting a contribution claim as a matter of law in this case. (Doc. 72 at 4).

Count III, though not clearly duplicative of an affirmative defense, does not serve a useful purpose. In this counterclaim, Defendant asks the Court to enter a declaration allocating liability for purposes of contribution. (Doc. 62 ¶¶ 51–63; *see id.* at 22–23). The Third-Party Defendants explain that a declaration as to allocation of contribution responsibility is proper and authorized "[d]ue to the uncertainty faced by the Third-Party Defendants and [the Government] with respect to allocation of contribution responsibility, and due to the serious impact of that uncertainty upon the ability of the Third-Party Defendants and the [Government] to determine the most appropriate and feasible alternatives to resolution of the claims against them[.]" (*Id.* ¶ 63). It is true that there is uncertainty for both parties in the litigation of this matter proceeding in both federal and state court. But this uncertainty does not make it proper for the Court to issue a declaratory judgment regarding allocation of damages without proper factual development. Thus, the Court declines to exercise jurisdiction over the declaratory judgment claim in Count III as well.

## CONCLUSION

Accordingly, the Government's Motion to Dismiss Counterclaims (Doc. 66) is **GRANTED** and the Third-Party Defendants' counterclaims are dismissed.

**SO ORDERED**, this 28th day of August, 2025.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**